IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

TIFFANY MEADOWS,                          )        Civil Action No. 3:11-290-JMC-JRM
                                          )
                    Plaintiff,            )
                                          )
            v.                            )        **REPORT AND RECOMMENDATION**
                                          )
MICHAEL J. ASTRUE,                        )
COMMISSIONER OF SOCIAL SECURITY           )
                                          )
                    Defendant.            )
_____    )

     This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, <u>et seq.</u>, DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## <u>ADMINISTRATIVE PROCEEDINGS</u>

     Plaintiff applied for DIB on February 13, 2007. She alleges disability as of December 23, 2006.[1] Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 10, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. On August 28, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled because she could perform her past relevant work as a food service worker.

_____

     [1]Plaintiff originally alleged that her onset date was April 25, 1990, but amended it (at the hearing) to December 23, 2006, after earnings records showed she worked through that date (Tr. 980).

Plaintiff was thirty-one years old at the time of the ALJ's decision. She has a high school education (GED), and attended college for several months. (Tr. 976). Plaintiff has past relevant work as a food service worker, cashier, stock clerk, printing press assistant, and textile color mixer. (Tr. 976-986). Plaintiff alleges disability as of December 23, 2006, due to mild myopathy, sickle cell disease ("SCD"), and depression. (Tr. 68).

The ALJ found (Tr. 68-73):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since December 23, 2006, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: mild myopathy, sickle cell disease, and depression (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, she can lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours per 8 hour workday, and stand/walk 6 hours per 8 hour workday. However, the claimant can only occasionally climb ramps and stairs, never climb ropes/ladders/ scaffolds, only frequently balance and stoop, only occasionally kneel/crouch/crawl, only understand and remember short and simple instructions, and only perform work not requiring ongoing interaction with the public.

6. The claimant is capable of performing past relevant work as a food service worker, light, unskilled, with an SVP of 2. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 23, 2006 through the date of this decision (20 CFR 404.1520(f)).

On December 17, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 3-7). Plaintiff then filed this action in the United States District Court on February 4, 2011.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971); <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

From Plaintiff's alleged onset time of disability (December 2006) through August 2009 (date of ALJ's decision), Plaintiff was treated by a number of physicians for SCD and chronic back and leg pain. Dr. Carol Kooistra, a neurologist, treated Plaintiff for pain from December 2006 through the beginning of 2008. Tr. 415, 418, 471-472, 474-500, 599-600, 649-682. She repeatedly noted normal examination findings (except reduced reflexes). <u>See</u> 418, 471, 472, 475, 599-600. Dr. Kooistra diagnosed Plaintiff with chronic pain attributed to SCD and prescribed narcotic medications for Plaintiff's pain. Tr. 471-472, 474-500, 649-682. In April 2007, Dr. Kooistra opined in a letter that Plaintiff's chronic pain in her legs was attributed to SCD, Plaintiff took narcotics for pain, Plaintiff had significant limitations from her pain, and Plaintiff was disabled. Tr. 473. After someone witnessed Plaintiff driving following a narcotic pain injection (despite instruction not to do so), Dr.

Kooistra denied Plaintiff further pain injections and referred Plaintiff to Dr. Husam Mourtada for pain management. Tr. 416.

Dr. Mourtada treated Plaintiff for back and leg pain from December 2007 through 2009. Tr. 321-344, 577-579. He repeatedly noted tenderness in Plaintiff's low back and hips (sacroiliac joints) and pain on external rotations of her hip, but full muscle strength, no sensory deficits, negative straight leg raises in both legs, and good range of lumbar spine motion. See Tr. 321-337, 339-341, 577-79. Dr. Mourtada noted on December 11, 2007 that he did not have an explanation for Plaintiff's back pain other than her SCD, but suggested she consider evaluation for a spinal stimulator or a morphine pump. Tr. 579. He prescribed narcotic pain medications. See Tr. 321-337, 577-579. In March 2008, Dr. Mourtada refused to prescribe any further narcotic pain medications because Plaintiff's work-up was "negative to find any painful etiology." Tr. 342-344. He referred Plaintiff back to Dr. Kooistra (who, according to Plaintiff, refused to see her) and to a center for detoxification from Morphine, and noted that Plaintiff became upset and insisted he prescribe narcotic pain medication, which he refused. Tr. 342-344. In September 2008, however, he noted she was taking Lortab. He administered bilateral sacroiliac joint steroid injection in September 23, 2008. Tr. 338. Dr. Mourtada prescribed Kadian (extended release Morphine) in October 2008, and Opana (a semi-synthetic opioid medication) in November 2008, December 2008, and February 2009. Tr. 323, 326, 329, and 331.

During 2007, Plaintiff was treated by Dr. Asim Pati, a hematologist, for SCD and back and leg pain. Tr. 584-585, 591-592, 617-620. An MRI of Plaintiff's spine was normal, and one of her hips showed findings consistent with SCD including evidence of marrow reconversion with sparring. Tr. 581-583. Dr. Pati advised Plaintiff to avoid narcotic pain medication as much as possible, noted

4

no evidence of sickle cell crisis, and stated that the source of Plaintiff's chronic pain remained unclear. Tr. 591-592, 584-585, 617-620.

Dr. Robert Ringel, a neurologist, began treating Plaintiff in March 2008 for back and hip pain. Tr. 413. Dr. Ringel noted that Plaintiff's motor and sensory exams showed no objective source of pain. He refused to prescribe narcotic pain medication, explaining he did not operate a chronic pain clinic and stated he would consider referral to an appropriate facility for such, Tr. 413. A nerve conduction study in April 2008 revealed mild underlying muscular disease (myopathy). Tr. 402-412. In August 2008, Dr. Ringel denied Plaintiff's request for narcotic pain medication, recommended a pain clinic evaluation or referral back to Dr. Pati, and noted that "paper work for her disability will be filled." Tr. 401. On August 14, 2008, Dr. Ringel completed a check-the-box form in which he opined that Plaintiff could work a total of one to two hours per day; sit, stand, and/or walk one hour intermittently in an eight-hour work day; lift up to twenty pounds occasionally but never lift more; never climb, twist, bend, stoop, reach above her shoulders, perform repetitive fine finger movements, perform repetitive eye/hand movements, or push and pull repetitively with either hand; and she could drive. He also opined that Plaintiff had "total limitations" that were not expected to improve. Tr. 318-320. In November 2008, Dr. Ringel completed a check-the-box form with the same limitations as the August 2008 form. Tr. 311-313.

During the relevant time period, Plaintiff also received emergency room treatment on numerous occasions. In February, March, June, and August 2007 she was treated with pain medications for leg and back pain and released. Tr. 506-529, 721-742, 761-769. On February 19, 2008 she was treated for back and hip pain and headaches. She was admitted to the hospital for sickle cell crisis. MRIs of her hips and lumbar spine were normal and physicians opined that the

source of her pain was unclear, but might be due to her SCD. Tr. 379-399. In August 2008, Plaintiff was treated for bleeding following a hysterectomy three weeks prior. She reported she was mowing the lawn when the bleeding started. Tr. 346-351, <u>see</u> Tr. 361-365.

In February 2007, Plaintiff was examined by Dr. David Stickler, a neurologist. Examination revealed normal muscle bulk and tone without tenderness; 5/5 muscle strength; straight leg raises bilaterally resulting in pulling sensation in her hamstrings, but no shooting pain; normal reflexes; normal gait; and intact sensation. Dr. Stickler also noted that prior MRIs of Plaintiff's lumbar spine and hips were unremarkable and that testing showed mostly normal processes. Tr. 944-946. In October 2007, Plaintiff was examined by Dr. Irvine Lupo, a psychiatrist. Plaintiff reported depressed mood and decreased ability to concentrate, and denied previous psychiatric treatment. Dr. Lupo noted that Plaintiff's mood seemed depressed and she was tearful, but she showed no signs of psychosis, her thought processes were normal and goal directed, and her memory and cognition were intact. He diagnosed Plaintiff with a depressive disorder. He prescribed Ambien and Mirtazapine to help Plaintiff sleep and for anxiety. Tr. 588-589.

In August 2007, Dr. William Crosby, a State agency physician, reviewed Plaintiff's medical records. He opined that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; sit, stand, and/or walk six hours each in an eight-hour day; push and pull without limitation; occasionally climb ramps and stairs; kneel, crouch, and crawl; frequently balance and stoop; and never climb ladders, ropes, scaffolds. Dr. Crosby thought that Plaintiff's pain was credible, but nonetheless that she was capable of light work. Tr. 608-615. In December 2007, Dr. Steven J. Fass, a State agency physician, reviewed Plaintiff's medical records. Dr. Fass agreed with

Dr. Crosby's opinion that Plaintiff's pain was credible, and she could perform light work (with the same restrictions). Tr. 550-557.

Dr. Lisa Varner, a State agency psychologist, reviewed Plaintiff's medical records and completed a psychiatric review technique form in January 2008. She stated that Plaintiff had mild restrictions in her activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. Tr. 558-571. Dr. Varner opined that Plaintiff was not significantly limited in sixteen areas of functioning and was moderately limited in four areas, and concluded that Plaintiff could perform simple repetitive tasks in a setting that did not require ongoing interaction with the public. Tr. 572-574.

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council. Records from Dr. Larry Ware, a family practitioner, indicate that Plaintiff was treated for back and leg pain throughout 2008. Dr. Ware diagnosed SCD and chronic pain, and prescribed pain medications. Tr. 956-970. In September 2008, Dr. Muthamma J. Machimada, a rheumatologist, noted that Plaintiff had no evidence of inflammation in her legs or arms, but had pain with internal and external rotation of her hips. He recommended a trial of non-steroidal anti-inflammatory medication, which Plaintiff refused as she would continue to take the anti-inflammatory medication prescribed by her primary care physician. Tr. 56-59. In February 2010, Dr. Pati noted that he had not seen Plaintiff since 2007, and that she was "non-compliant and missed several appointments in the past." He also noted that Plaintiff had not had any episodes of sickle cell crisis requiring hospitalization since February 2008. Dr. Pati concluded that Plaintiff "remained stable form a sickle cell point of view." Tr. 12-14. In March 2010, Plaintiff presented to the emergency room. Doctors

noted that Plaintiff began experiencing a sickle cell crisis while she was at a concert. Plaintiff was admitted to the hospital; treated with antibiotics, intravenous hydration, and pain medication; and released three days later. Tr. 16-47.

Additionally, Plaintiff submitted (to the Appeals Council) November 2009 opinions from Dr. Ringel and Dr. Mourtada regarding her work-related limitations. Dr. Ringel opined that Plaintiff could not sustain any kind of work (even sedentary work) on a full-time basis because of her SCD, chronic pain, and medication side effects. Tr. 1015. Dr. Mourtada opined that doctors had been unable to find the source of Plaintiff's pain (but noted it could be related to her sickle cell condition or could be psychological condition such as a somatoform disorder). He noted that Plaintiff was doing fairly well on her current medication regimen, and he had not noted any side effects from her medications. Dr. Mourtada concluded that Plaintiff could perform light work, but would experience frequent interruptions to her concentration due to her pain. Tr. 1013.

## HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she received disability as a child because of her SCD, had trouble during school because of her SCD, and was fired from many jobs because she missed lots of days due to illness. Tr. 990-992. Plaintiff stated that during a typical day she remains in bed "all day...off and on" except for when she gets up to stretch her legs. Tr. 986. She complained of trouble sleeping because of her pain and because she was scared she would not wake up. Tr. 987-88. She also said she watched television, read, and listened to music. Tr. 998-999. Plaintiff did not think she could work at a job where she could sit all day because of side effects of medication (which she later testified included constipation, nausea, and lack of appetite) and because sitting caused her lower back and legs to hurt. Tr. 992-993, 1000. She also stated that she was

depressed. Tr. 994. Plaintiff stated that she was taking about thirty-five milligrams of Morphine a day for her pain. Tr. 993.

Plaintiff testified that her husband helped with cooking and taking care of her children, and her children helped with cleaning and cooking. Tr. 988-989, 994-995. She said she occasionally prepared quick meals and occasionally went to church. Tr. 990, 997-998. Plaintiff also said she drove short distances sometimes to pick her children up from school. Tr. 977, 997. She denied doing any yard work. Tr. 1001,1003.

## DISCUSSION

In her initial brief, Plaintiff alleges that: (1) the ALJ erred by failing to discuss the statements of her friends, members, and co-workers; (2) the ALJ conducted an improper credibility analysis; (3) the ALJ improperly gave little weight to the opinions of treating physician Dr. Ringel and ignored the opinions of treating physician Dr. Kooistra; (4) the ALJ found an improper RFC; (5) the ALJ erred in failing to properly evaluate the demands of Plaintiff's past relevant work; and (6) the Appeals Council failed to properly evaluate new and material evidence presented to it. In his brief, the Commissioner contends that substantial evidence[2] supports the ALJ's finding that Plaintiff retained the RFC to perform a limited range of light work and was not disabled under the Social Security Act. The Commissioner filed a Notice of Supplemental Authority requesting that the Commissioner's

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

decision be affirmed as to the Appeals Council issue based on the decision of the Fourth Circuit Court of Appeals in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). Plaintiff filed an amended brief in which she argues that this action should be remanded based on Meyer, and the Commissioner filed a response brief.

A.   Credibility

Plaintiff contends that the ALJ erred as to his credibility determination because he failed to articulate his reasons for discounting her credibility and erred in discounting her pain based on a lack of objective reasons. She appears to argue that this is improper as she has SCD which rarely produces such objective medical evidence. Plaintiff also argues that the ALJ improperly discounted the side effects of her medications. The Commissioner contends that the ALJ reasonably discredited Plaintiff's complaints of disabling pain and mental limitations because the medical evidence did not support a finding that Plaintiff was disabled and because Plaintiff's testimony was inconsistent with medical evidence.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he or she suffers. A

claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

After finding that Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms (Tr. 71), the ALJ appears to have impermissibly discounted Plaintiff's credibility primarily based on a lack of objective medical evidence in contradiction to the Fourth Circuit's opinion in Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006).[3] The claimant in Hines also suffered from SCD. In Hines, the ALJ made the error of discounting claimant's subjective complaints because there was "no evidence of end-organ damage to [claimant's] kidneys or bones, neurological deficits, swollen joints or extremities, muscle atrophy, or decreased range of motion in [claimant's] joints." Id. at 563. Here, the ALJ does not explicitly explain why he discounted Plaintiff's credibility, but appears to have done so based on a lack of objective medical findings, noting a lack of objective findings on MRIs of Plaintiff's lumbar spine and hips, that Dr. Pati stated the etiology of Plaintiff's chronic pain was unclear, that Dr. Mourtada noted he did not have an explanation for Plaintiff's pain other than her SCD, and that Dr. Ringel noted only mild myopathy and no objective source of pain. Tr. 70-71. The ALJ appears to have discounted Plaintiff's pain

_____

[3]In Hines, it was noted that SCD is a "particularly insidious disease because it rarely produces the objective medical evidence that clinicians desire." 453 F.3d at 560–61. The Fourth Circuit went on to observe:

> [p]atient[s] with SCD ... are in an almost uniquely disadvantaged position from the point of view of pain management. The condition is life threatening at times, yet patients are healthy between sickling episodes. Some individuals are affected by painful episodes much more than others, and pain is often the only or main symptom of an acute episode of illness.

Hines, 453 F.3d at 561 (quoting James Elander & Kenny Midence, A Review of Evidence About Factors Affecting Quality of Pain Management in Sickle Cell Disease, 12(3) The Clinical J. of Pain 180–93 (Sept.1996)).

11

because her physicians were uncertain as to what was causing her pain. Review of the record, however, indicates that Plaintiff's treating physicians noted her complaints of pain on numerous occasions and often prescribed her strong pain medications (including narcotics) for pain. Although the Fourth Circuit noted that a claimant's complaints "need not be accepted to the extent they are inconsistent with the available evidence," Hines, 453 F.3d at 555 n. 3, is unclear what inconsistencies the ALJ here relied upon in his decision.

The Commissioner argues that the ALJ also discounted Plaintiff's credibility based on an inconsistency between her statement that she stayed in bed twenty-one to twenty-two hours a day and medical notes indicating she pushed a lawnmower on one occasion and drove a car on one occasion after receiving a narcotic injection (and being advised not to drive). Plaintiff, however, testified that she only pulled the lawn mower out so her husband could cut the yard. Tr. 1003. The other medical record to which the ALJ refers specifically notes that Plaintiff was seen driving her car in the parking lot, but Plaintiff told the physician said she only did so because her grandmother had difficulty pulling out of the parking space. Tr. 416.

It is recommended that this action be remanded to the Commissioner to determine Plaintiff's credibility based on the two-part test and Hines as outlined above. In doing so, the ALJ should articulate reasons for the credibility determination. See SSR 96-7p.

B.      Lay Witness Evidence

Plaintiff alleges that the ALJ erred in ignoring the supporting statements of her family members, friend, and co-worker. She argues that these statements are relevant, and support her claims of disabling pain and limitations. The Commissioner appears to contend that the ALJ

considered all of the evidence of record such that the lay witness testimony was considered even though it is not discussed in the ALJ's decision.

Here, the ALJ did not discuss any of the statements of Plaintiff's lay witnesses. Although such a failure on its own might not be sufficient to remand this case to the Commissioner, these statements appear to impact on Plaintiff's credibility (and the ALJ did not properly consider Plaintiff's credibility). Additionally, in determining a claimant's RFC, "the ALJ must consider the relevant medical evidence and other evidence of the claimant's condition in the record, including testimony from the claimant and family members." Morgan v. Barnhart, 142 F. App'x. 716, 720 (4th Cir. 2005)(citing 20 C.F.R. § 404.1529(c)(3))).

The Commissioner argues that "the ALJ meets the goal of agency regulations concerning lay witness testimony by discussing the same impairments and symptoms attested to by the lay witness." Commissioner's Brief at 24. However, where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony, specific reasons are not necessary for dismissing the lay witness's testimony. See Lorenzen v. Chater, 71 F.3d 316, 319 (8th Cir.1995); Carlson v. Shalala, 999 F.2d 180 (7th Cir.1993); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir.1992); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984).

Here, the ALJ did not mention any of the statements of Plaintiff's family, friend, and co-worker such that it is not readily apparent from the decision whether these statements were considered and why they were discounted. In describing Plaintiff's complaints of subjective pain and her testimony, the ALJ noted that Plaintiff complained of severe, chronic pain in her hips, back, and legs, problems sleeping; a lack of ability to perform activities; mental problems including

nervousness and depression; and side effects from her medications. Tr. 71. Even if it could be determined that the failure to address these statements was harmless because the statements could be discounted for the reasons Plaintiff's testimony was discounted (which it is not as discussed above), the lay witness statements contain additional allegations of the effects of Plaintiff's impairments that were not discussed in the ALJ's decision. Family members and/or Plaintiff's friend wrote that they had to help Plaintiff with grocery shopping, running errands, household chores, and picking up her children from school. Her former co-worker testified as to Plaintiff's problems on the job and need to go to the emergency room. Thus, it is recommended that this action be remanded to the Commissioner and that the ALJ be directed to consider the lay witness testimony and make credibility determinations.

C.    Treating Physicians

Plaintiff claims that the ALJ improperly gave little weight to the opinions of treating physician Dr. Ringel and ignored the opinion of treating physician Dr. Kooistra. In particular, Plaintiff contends that Dr. Ringel's opinion is not inconsistent with Plaintiff's clinical history and his records provide a basis for his opinions. The Commissioner argues that the ALJ gave good reasons for declining to give Dr. Ringel's opinions significant weight. Additionally, the Commissioner argues that the failure to explicitly discredit Dr. Kooistra's opinion is harmless an opinion that Plaintiff is disabled is a conclusory opinion that is not entitled to any weight,[4] the ALJ stated he

---

[4]The issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(d)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & (continued...)

considered the entire record and all of the evidence, the ALJ specifically refers to Dr. Kooistra's decision not to give Plaintiff's narcotic injections after being told that Plaintiff drove, and Dr. Kooistra repeatedly noted normal examination findings.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

---

[4](...continued)
Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

The ALJ's decision to reject Dr. Ringel's opinions is not supported by substantial evidence. The ALJ discounted Dr. Ringel's opinion because it was "inconsistent with the clinical history revealing complaints of pain with very few supportive objective findings." Tr. 73. Additionally, the ALJ discounted Dr. Ringel's opinion because Dr. Ringel did not explain how he arrived at his conclusions, and merely checked off boxes without accompanying analysis. Id. Here, the ALJ does not discuss why he finds the lack of supportive objective findings important where Plaintiff suffers from SCD. Additionally, Dr. Ringel's opinion may be supported by the disability opinion of treating physician Dr. Kooistra, yet this opinion was not addressed by the ALJ. This action should be remanded for the ALJ to consider Dr. Ringel's opinions in light of the Fourth Circuit's instruction in Hines regarding claimants with SCD. See Hines, 453 F.3d at 565. Additionally, the ALJ should consider all of the evidence, including the opinion and records of treating physician Dr. Kooistra.

Because the undersigned finds that the ALJ's failure to properly analyze Plaintiff's credibility and the opinions of her treating physicians are sufficient reasons to remand the case to the Commissioner, the undersigned declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error and consider all of the evidence (including evidence that was before the Appeals Council).

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to evaluate Plaintiff's credibility and consider the opinions of her treating physicians in light of all of the evidence and applicable law, and to consider Plaintiff's remaining allegations of error.

16

It is, therefore, RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

June 25, 2012
Columbia, South Carolina